FILED

JUL 2 0 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MARTIN ROMERO, | ) | |
| | ) | Civil No. 07-917-PK |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEAN HILL, | ) | FINDINGS AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |

Anthony D. Bornstein
Federal Public Defender's Office
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Lester R. Huntsinger
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

    Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner Martin Romero brings this habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges his convictions and sentence for rape in the first degree, sexual abuse in the second degree, sodomy in the first degree, unlawful sexual penetration, sexual abuse in the first degree, sexual abuse in the third degree and incest. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) should be denied, and Judgment should be entered dismissing this action with prejudice.

**BACKGROUND**

On January 14, 1999, the Klamath County Grand Jury returned an amended indictment charging Romero with five counts of Rape in the First Degree, four counts of Sexual Abuse in the Second Degree, five counts of Sodomy in the First Degree, three counts of Unlawful Sexual Penetration in the First Degree, one count of Unlawful Sexual Penetration in the Second Degree, four counts of Sexual Abuse in the First Degree, two counts of Sexual Abuse in the Second Degree and twelve counts of Incest. Respondent's Exhibit 102, pp. 1-11. A jury found Romero guilty on all counts and the trial court imposed a sentence totaling 426 months. Respondent's Exhibit 101.

Romero directly appealed his sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review. State v. Romero, 182 Or. App.

293, 49 P.3d 852 (2002), <u>rev. denied</u> 334 Or. 632, 54 P.3d 1042

(2002); Respondent's Exhibits 103-107.

Romero next filed for post-conviction relief ("PCR") in state

court.  The PCR trial court denied relief.  <u>Romero v. Hill</u>, Malheur

County Circuit Court Case No. 03-01-2563-M.  On appeal, the Oregon

Court of Appeals affirmed without a written opinion, and the Oregon

Supreme Court denied review.  <u>Romero v. Hill</u>, 208 Or. App. 757, 145

P.3d 1145 (2006), <u>rev. denied</u> 342 Or. 416, 154 P.3d 722 (2007);

Respondent's Exhibits 127-132.

On June 21, 2007, Romero filed this action.  He raised the

following grounds for relief:

1.    Ground One:  The Trial Court violated Defendant's State
      and Federal Constitutional Right to present Exculpatory
      Evidence.

      Supporting Facts:  The Trial Court violated Defendant's
      State and Federal Constitutional Rights to present
      Exculpatory Evidence when it excluded evidence of the
      victim's past sexual behavior, the probative value of
      which outweighed the State's interest in excluding the
      Exculpatory Evidence.

2.    Ground Two:  Both my Trial Attorney, Markku Sario, and my
      Appellate Attorney, Susan F. Drake, allowed the
      Prosecutor to use Inadmissable Hearsay Evidence.

      Supporting Facts:  My Trial Attorney, Markku Sario, and
      my Appellate Attorney, Susan F. Drake, Failed to argue
      the fact that the Trial Court allowed the Prosecutor to
      use Inadmissible Hearsay Evidence during my Trial and on
      Direct Appeal.

3.    Ground Three:  My Trial Attorney, Markku Sario, and my
      Appellate Attorney, Susan F. Drake, Failed to challenge
      my Unconstitutional Sentence.

3 - FINDINGS AND RECOMMENDATION

Supporting Facts:  My Trial Attorney, Markku Sario, and my Appellate Attorney, Susan F. Drake, Failed to challenge my Unconstitutional Sentence and the applicability of the sentencing guidelines in that the Prosecutor was allowed to submit a purposed Measure 11 Sentence which was ordered by the Trial Court Judge.  It should be noted that my alleged crimes were said to have been committed prior to Measure 11 Sentencing Guidelines becoming law.

4.    Ground Four:  My Trial Attorney, Markku Sario, was negligent, Inadequate, Ineffective, and Failed in his Fiduciary Duties to me.

Supporting Facts:  My Trial Attorney, Markku Sario, was negligent, inadequate, ineffective, and Failed in his Fiduciary Duties to me by not having the specific items of evidence tested for D.N.A. before o[r] during my Criminal Trial.

5.    Ground Five:  Klamath County presented "Secret" Unsworn Witnesses to provide information to the Grand Jury in Petitioner's Case.

6.    Ground Six:  My Trial Attorney, Markku Sario, was negligent and Failed in that he did not at no time attempt or [e]ngage and present a defense of any kind protecting my Parental rights.

7.    Ground Seven:  My Trial Attorney, Markku Sario, and my Appellate Attorney, Susan F. Drake, Failed to raise the following Double Jeopardy issue in my Trial, and on Direct Appeal.

8.    Ground Eight:  My Trial Attorney, Markku Sario, Failed to object to the Trial Court's allowing a Doctor Rudd to testify at my Trial, without prior notice, or 15 day notice given that he would testify.

9.    Ground Nine:  Failed to present expert medical testimony regarding other possible causes of damage to the victim's hymen.

10.    Ground Ten:  Failed to present witnesses regarding victim's other sexual relationships.  This would have explained the damage to the victim's hymen as well as her sexual sophistication, including, Manuel Romero.

11.  Ground Eleven:  Failed to properly impeach the victim by way of her prior False Accusations.

12.  Ground Twelve:  Failed to investigate and present a proper alibi defense on behalf of Petitioner.

13.  Ground Thirteen:  Failed to require the State to elect which occurrence of criminal conduct they would rely upon as proof of the crimes charged.

14.  Ground Fourteen:  Failed to require specific Jury Instructions regarding the specific dates the Jury would have to determine that the crimes occurred.

15.  Ground Fifteen:  Failed to file a motion to suppress evidence of Cares Tape that was made for medical purposes.

16.  Ground Sixteen:  Failed to object to the introduction of the Cares Tape during my Trial.

17.  Ground Seventeen:  Failed to call expert witnesses regarding the victim's ability to testify competently. The victim was under medication during my Trial.

18.  Ground Eighteen:  Failed to object to the victim being presented as a young child in front of the Jury.  Though she was 17 years old, the victim was allowed to hold and hug a teddy bear during her testimony.

19.  Ground Nineteen:  Failed to require a Fast and Speedy Trial.

20.  Ground Twenty:  Violated the Attorney-Client Privilege.

21.  Ground Twenty-One:  Failed to impeach witnesses and the victim on whether or not the Petitioner was circumcised. He also Failed to present testimony as to whether Petitioner was in fact circumcised.

22.  Ground Twenty-Two: Failed to properly investigate all of the facts relating to this case or to consider expert witnesses.

23.  Ground Twenty-Three: Failed to appeal the Court's denial of his motion to elect.

24. Ground Twenty-Four:   Failed to protect Petitioner's rights to a Fair and Impartial Trial by opening the door for the Prosecutor to introduce prior bad acts evidence regarding the Petitioner.   This evidence was highly Prejudicial and not probative of the issue at hand.

25. Ground Twenty-Five:   Filed to file a motion to dismiss all four original charges with Prejudice from the first original Case.   Fast and Speedy Trial Rights were denied when the State reinstated all the charges under a new indictment.

26. Ground Twenty-Six:  Failed to properly advise Petitioner on his right to testify on his own defense, this led to Petitioner waiving his right to testify and to provide important relevant information.

27. Ground Twenty-Seven:   Failed to inform and consult Petitioner regarding Plea Negotiations prior to Trial.

28. Ground Twenty-Eight:  Failed to challenge the Grand Jury Indictment based on the fact that the January 1999 Grand Jury was not informed of similar charges brought by the same victim against Petitioner's Brother, Manuel Romero, during part of the same time period.

29. Ground Twenty-Nine:   Appellate Counsel Failed to raise issues from the Trial that had been preserved by Trial Counsel.

30. Ground Thirty:   Appellate Counsel Failed to provide to Petitioner copies of materials including:   messages, exhibits, and any other documents upon which she based her decisions regarding my Appeal.

31. Ground Thirty-One:  Appellate Counsel Failed to challenge the Trial Court's denial of Trial Counsel to adequately Cross Examine the State's Witnesses.

32. Ground Thirty-Two:  Appellate Counsel Failed to challenge the Unconstitutional Sentence and the applicability of the Sentencing Guidelines.

///

///

///

6 - FINDINGS AND RECOMMENDATION

Respondent asks the court to deny relief on the Petition because:   (1) the majority of petitioner's claims are not traversed; and (2) the remaining claims were correctly denied on the merits in state-court decisions that are entitled to deference.

## DISCUSSION

### I.   Unargued Claims

Notwithstanding the fact that respondent addressed all of the claims set forth in the *pro se* Petition, Romero fails to brief Grounds Two through Twenty-Three, Grounds Twenty-Five through Thirty One, and Ground Thirty-Two as it relates to Romero's assertion that appellate counsel provided ineffective assistance when she failed to challenge the applicability of the Sentencing Guidelines.   The court has nevertheless reviewed the record as to these Grounds and determined that they would not entitle petitioner to relief.   See 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

### II.   Merits

#### A.   Standard of Review

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was:   (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id. at 410. The state court's application of clearly established law must be objectively unreasonable. Id. at 409.

///

///

///

8 - FINDINGS AND RECOMMENDATION

B.    **Analysis**

    1.    **Ground One (Exclusion of Evidence of Victim's 1998
          Report of Pregnancy and Rape By a Former Boyfriend)**

    Romero contends the trial court's exclusion of proffered
evidence concerning the victim's 1998 report that she was pregnant
as a result of a rape by her former boyfriend violated Romero's Due
Process right to present a defense.    According to Romero, this
evidence was essential to his case and its exclusion seriously
prejudiced his case.    Memorandum in Support (#39), p. 12.

    The Due Process Clause guarantees a criminal defendant "the
right to a fair opportunity to defend against the State's
accusations." Chambers v. Mississippi, 410 U.S. 284, 294 (1973).
However, that right is not unfettered.    Montana v. Egelhoff, 518
U.S. 37, 42 (1996).    States have broad latitude under the
Constitution to establish rules excluding evidence from criminal
trials.    Holmes v. South Carolina, 547 U.S. 319, 324 (2006).
"While the Constitution . . . prohibits the exclusion of defense
evidence under rules that serve no legitimate purpose or that are
disproportionate to the ends that they are asserted to promote,
well-established rules of evidence permit trial judges to exclude
evidence if its probative value is outweighed by certain other
factors such as unfair prejudice, confusion of issues, or potential
to mislead the jury." Id. at 326.

    Oregon's rape shield law governs the admissibility of evidence
in the prosecution of a broad spectrum of sexual offenses,

    9 - FINDINGS AND RECOMMENDATION

including those at issue in Romero's trial. See Or.Rev.Stat. § 40.210 (also known as Rule 412). The record shows that the trial court heard extensive arguments relating to a pre-trial motion to admit evidence that: (1) Romero's brother was convicted of raping the victim in this case when she was very young; and (2) the victim reported to a school counselor that she believed she was pregnant as a result of having been raped by her former boyfriend. Trial Tr., Part A, Volume I, pp. 10-17 & 40-56. With regard to the evidence that the victim reported she was pregnant as a result of having been raped by her former boyfriend, Romero's trial counsel argued this evidence was necessary to refute the victim's allegations that she and Romero were having sex in the months just preceding her report that she believed she was pregnant. Romero asserted that because the victim never mentioned Romero as someone who may have gotten her pregnant--and instead identified a former boyfriend, she was making contradictory allegations. Id. at 41-42.

The trial court ruled in Romero's favor as to the evidence that Romero's brother had been convicted of raping the victim. The court reasoned Romero was entitled to present this evidence in an effort to explain expert medical testimony and physical evidence that the victim had been sexually abused at an early age. Id. at 127-29. With regard to the victim's 1998 report of pregnancy and rape by her former boyfriend, however, the State identified relevant case law to support exclusion of this evidence and further advised the trial court that, if called, the victim would testify

10 - FINDINGS AND RECOMMENDATION

that the reason she believed her former boyfriend had impregnated her, and not Romero, is that Romero always "pulled out," but that her former boyfriend had ejaculated inside her.   Id. at 43-44. Ultimately, the trial court ruled as follows:

> As to [the former boyfriend], the second area, I've concluded that that should not come in to evidence, about basically the question being or the allegation that, she felt she was pregnant and when asked who did it, she felt [her former boyfriend] and did not mention the Defendant in this case.  That evidence I don't think should come in and the reason is I've looked at the balancing test and clearly, as Defense has argued, there is some probative value, but I don't think when you consider the intent behind the rule, behind 412, and the intent in this situation is just squarely the harm the statute is intended to prevent and that is disclosing the sexual history.
>
> I looked through carefully as I could, the motive and bias and so forth and those are really addressing different issues so I just don't think that rings true on this particular case.  Or that that makes an[y] difference here.

Id. at 129-30.[1]

Based on the foregoing, Romero has not met his burden of showing this court that the trial court's determination excluding evidence that the victim reported to a school counselor that she believed she was pregnant as a result of having been raped by her former boyfriend violated Romero's Due Process right to present a

---

[1]  Notably, evidence that the victim had reported that her former boyfriend raped her (though with no reference to her belief he had made her pregnant) came in via a tape of her CARES interview, which was introduced into evidence by stipulation. Trial Tr., Part A, Volume III, pp. 368, 383-85.

defense or was contrary to or an unreasonable application of clearly established federal law.

### 2. Ground Twenty-Four (Ineffective Assistance of Trial Counsel for Opening the Door to Prior Bad Acts Evidence)

Romero contends his trial counsel rendered ineffective assistance when he opened the door for presentation of evidence of his juvenile homicide conviction.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." Id at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. Id at 696.

I note that Romero does not present independent argument on the merits of this claim in his briefs before this court. Instead he relies on the record below, asserting that "[f]or the reasons

12 - FINDINGS AND RECOMMENDATION

advanced in Romero's brief in the appeal from the denial of post-conviction relief, the state court's ruling is both contrary to and an unreasonable application of Supreme Court precedent interpreting the Sixth Amendment guarantee of effective trial counsel." Memorandum in Support (#39), p. 14. Romero alternatively argues that if the court has reservations concerning the historical facts surrounding this claim, it should conduct an evidentiary hearing. Id. at 15. The court has carefully reviewed the record on appeal from denial of post-conviction relief. See Respondent's Exhibits 127, 128, & 129. Even assuming counsel's representation fell below an objective standard of reasonableness for opening the door to presentation of Romero's juvenile homicide adjudication by calling witnesses to testify that Romero was a law-abiding citizen, counsel's performance did not prejudice the defense and, thus, Romero cannot satisfy Strickland's prejudice prong. This is so because evidence that Romero had previously killed someone had come in during the State's case via the victim's CARES interview which was played for the jury. Accordingly, Romero has not demonstrated that the PCR court's denial of relief on this claim was contrary to or an unreasonable application of clearly established federal law. The court need not conduct an evidentiary hearing to resolve this claim.

///

///

///

13 - FINDINGS AND RECOMMENDATION

3.    **<u>Ground Thirty-Two (Ineffective Assistance of
Appellate Counsel for Failing to Assign Error to
the Trial Court's Imposition of Consecutive
Sentences Pursuant to Apprendi/Blakely)</u>**

Petitioner claims that his direct appellate attorney was constitutionally ineffective when she failed to assign error to the trial court's imposition of consecutive sentences on findings made by the court rather than by a jury pursuant to <u>Apprendi v. New Jersey</u>, 503 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). In the time since Romero filed his supporting memorandum in this case, the Supreme Court has upheld the constitutionality of Oregon's statute delegating fact-finding for consecutive sentencing to judges in an <u>Apprendi/Blakely</u> challenge. <u>Oregon v. Ice</u>, ___ U.S. ___, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). Accordingly, the state court's rejection of this ground for relief is neither contrary to, nor an unreasonable application of, clearly established federal law.

<u>**RECOMMENDATION**</u>

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) should be DENIED, and judgment should enter DISMISSING this case with prejudice.

<u>**SCHEDULING ORDER**</u>

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 3, 2009. If no

objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

<u>**NOTICE**</u>

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.  These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 20th day of July, 2009.

Paul Papak
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION